# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TERRI GREENE, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) NO. 3:13-cv-1038<br>) JUDGE CRENSHAW<br>) |
| ROBERTSON COUNTY BOARD OF EDUCATION, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION

Terri Greene alleges that the Robertson County Board of Education discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Tennessee's common law prohibition against retaliation. Defendant has filed a motion for summary judgment seeking dismissal of all claims. (Doc. No. 32.) For the reasons that follow, Defendant's motion will be **GRANTED**. In summary, Plaintiff's ADA discrimination claim based on her termination fails because she has not shown that she had a disability or that Defendant regarded her as having a disability to entitle her to protection under the ADA. Her claim that she was terminated in retaliation for complaining about discrimination on the basis of her disability fails because she did not engage in protected activity under the ADA. Plaintiff's retaliatory demotion claims under the ADA and state law fail because they are time barred.

## I. Factual and Procedural History

Plaintiff worked for the Robertson County Board of Education from 1994 until 2012. Initially, she was a cook in the Springfield High School cafeteria. During the 2010-2011 school year, she served as an assistant manager at Springfield, where her manager was Juli Bagwell. In

the spring of 2011, her doctor recommended that she undergo a total hip replacement. She informed Ms. Bagwell about this surgery. This, Plaintiff contends, resulted in Ms. Bagwell treating her differently and creating a hostile work environment.[1] (Doc. No. 14 at ¶¶ 7-9.)

Specifically, Plaintiff alleges that Ms. Bagwell treated her differently by favoring another employee over her and withholding information she needed to do her job well. (Doc. No. 42 at 5.) After complaining about the way Ms. Bagwell was treating her, Ms. Bagwell allegedly told Plaintiff, "[I]f you don't like the working conditions, you know where the back door is." (Doc. No. 14 at ¶ 9.) Plaintiff quit her job that day and immediately complained to Judy Fentress, the School Nutrition Program Supervisor. She complained to Mr. Fentress that Ms. Bagwell had created a hostile work environment because she showed favoritism to another employee. (Doc. No. 32-1 at 33-34.) However, she now admits that her perception of Ms. Bagwell's favoritism towards another employee was not based in any way on Plaintiff's actual or perceived disability and that her complaints to Ms. Fentress were not related to Plaintiff' actual or perceived disability. (Doc. No. 42 at 5.)

As the School Nutrition Program Supervisor, Ms. Fentress made the recommendation to hire, rehire, or not rehire employees in the school nutrition program. (Doc. No. 42 at 9.) After her resignation, Plaintiff asked Ms. Fentress for a transfer to another school. (Doc. No. 14 at ¶ 11.) One week later, Defendant reassigned Plaintiff to Krisle Elementary School as a cafeteria cook for the remainder of the 2010-2011 school year. (Id.) Her pay was lower in this position. She alleges that Defendant demoted her to this position in retaliation for her complaints to Ms. Fentress about Ms. Bagwell. (Id.)

---

[1] Although Plaintiff uses the phrase "hostile work environment" in the fact section of her Amended Complaint, she does not demand relief based on a "hostile work environment" as a separate cause of action. (Doc. No. 14 at 4-5.) Fed. R. Civ. P. 8(a)(3).

For the 2011-2012 school year, Defendant rehired Plaintiff as the assistant cafeteria manager at Westside Elementary School, where her supervisor was Edna Cobbs. (Id. at 6-9.) Plaintiff immediately told Ms. Cobbs that she was scheduled to have a hip replacement surgery on December 5, 2011. (Id. at 6.) However, she did not indicate to Ms. Cobbs that she was disabled or request an accommodation for her hip issues. (Id.) Indeed, Plaintiff now admits that her hip problem had no effect on her ability to perform her job responsibilities at Westside. (Id. at 6-7.) Neither does she offer evidence that her hip problem had any effect on her ability to perform other life activities. The surgery was postponed from December 2011 to the summer of 2012. (Id.)

Ms. Cobbs evaluated Plaintiff on three occasions during her first year at Westside. (Id. at 10-11.) The first evaluation, completed on October 17, 2011, was at the low end of satisfactory. (Id. at 8.) The second was completed February 2, 2012, and was significantly higher than the first evaluation. (Id.) The time periods when Plaintiff missed work for doctor's appointments, just before Christmas of 2011, were covered by this second evaluation period. (Id.) Plaintiff states that the second evaluation came after she had complained to Ms. Fentress about Ms. Cook's favoritism. (Id.) The third evaluation was the lowest of the three and was not satisfactory. Plaintiff alleges, but offers no proof other than her opinion, that Ms. Cobbs gave her poor evaluations because she did not want her at Westside as a result of her prior complaints about Ms. Bagwell, her manager at Springfield, and because of her need for hip replacement surgery. (Id. at 7-8.)

Ms. Cobbs's concerns about Plaintiff's work performance included an accusation that Plaintiff stole money from a student account, which she explained was a computer mistake. (Id. at 7.) Ms. Cobbs also criticized Plaintiff's failure to use a timer, failure to timely advise her supervisor of accidents in the kitchen, failure to properly store certain items, and her attitude. (Id. at 9.).

3

Plaintiff does not dispute that she argued with Ms. Cobbs about work rules and directions and that Ms. Cobbs admonished her about having a bad attitude. (Id. at 9.)

Ms. Fentress signed each of Ms. Cobbs's evaluations. At no time did Plaintiff advise Ms. Fentress that the problems between her and Ms. Cobbs were the result of Plaintiff's alleged disability or being perceived as having a disability. Plaintiff also never indicated to Ms. Fentress that she needed any accommodation or alteration of her work duties or that she was in any way incapable of performing her work duties. (Id. at 11.) Plaintiff now concedes that Ms. Fentress did not view her as having a disability, being disabled, or needing any accommodation. She further concedes that her working conditions and treatment was not the result of any disability or perceived disability. (Id. at 6, 10.)

Based on the decline in Plaintiff's performance, and particularly her low evaluation scores for attitude, judgment, and responsibility, Ms. Fentress recommended to the Director of Schools that Plaintiff not be renewed or rehired for the 2012-2013 school year. (Id. at 11-12.) Based on Ms. Fentress's recommendation, the Director of Schools did not rehire Plaintiff for the 2012-2013 school year.

On November 29, 2012, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that Defendant discriminated against her as a result of her disability or perceived disability and retaliated against her as a result of her complaints. On June 25, 2013, she received a right-to-sue letter, and timely filed this action on September 23, 2013. (Doc. No. 11 at ¶ 16.)

II. **Legal Standard**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Pennington v.

State Farm Mut. Automobile Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating 'an absence of evidence to support the nonmoving party's case.'" Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the moving party is able to meet this initial burden, the non-moving party must then "set forth the specific facts showing that there is a genuine issue for trial." Id. (quoting Fed. R. Civ. P. 56(e)). Conclusory allegations and subjective perceptions or assessments do not constitute evidence "sufficient to stave off summary judgment." Wade v. Knoxville Utilities Bd., 259 F.3d 452, 463 (6th Cir. 2001).

### III.　Legal Analysis

#### A. ADA Discrimination Claim

Plaintiff claims Defendant discriminated against her both because she has an actual "disability" and because Defendant "regarded" or perceived her as disabled as a result of her hip problem, which entitles her to protection under the ADA. (Doc. No. 40 at 6.) Defendant denies that Plaintiff had a disability or that it "regarded her" as having a disability and seeks dismissal of this claim. (Doc. No. 35 at 8-9.)

The ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Without direct evidence of discrimination, a plaintiff may prove　disability　discrimination　using　the　McDonnell　Douglas　burden-shifting

framework. Demyanovich v. Cadon Plating & Coatings, L.L.C., 747 F.3d 419, 433 (6th Cir. 2014). First, the plaintiff must make a prima facie case of disability discrimination by showing that: (1) she is disabled, (2) she is otherwise qualified to perform the essential functions of her position, with or without accommodation, and (3) she suffered an adverse employment action because of her disability. Id. Once Plaintiff has established a prima facie case, the burden shifts to the employer to articulate a nondiscriminatory legitimate reason for the termination. Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 310 (6th Cir. 2000). If the employer meets this burden, the plaintiff must then show that the proffered reason is a pretext for discrimination. Id. The plaintiff's disability must be the "but for" cause of the adverse employment action. Id.

Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. Here, Plaintiff makes no argument about any major life activity that was substantially limited by her need to have hip replacement surgery. (See Doc. No. 40 at 6). Indeed, she admits that the problem with her hip did not in any way affect her ability to perform her job (Doc. No. 42 at 6-7), and she offers no evidence that it otherwise effected any other major life activities. Plaintiff has failed to show that she has an actual disability covered by the ADA.

Plaintiff also has failed to meet her burden to prove that Defendant regarded her as having a disability. The Supreme Court has provided the following guidance for analyzing the regarded-as-disabled prong of the ADA:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical

> impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Sutton v. United Air Lines, 527 U.S. 471, 489 (1999). Plaintiff makes neither argument here, and more critically, offers no evidence that the Defendant had any such "mistaken" beliefs about her physical abilities or life activities. At best, here the record shows that Defendant had knowledge of Plaintiff's hip problems. However, relying on Sutton, the Sixth Circuit has held that an employer's mere awareness that an employee has severe health problems and physical impairments does not satisfy the regarded-as prong. Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1106 (6th Cir. 2008). In short, Plaintiff offers nothing Defendant said, did, or believed that would remotely suggest it mistakenly perceived her as having a disability. Defendant's motion for summary judgment on the ADA discrimination claim is well taken.

### B. ADA Retaliation Claim

Plaintiff also claims that Defendant retaliated against her for complaining about discriminatory treatment by her supervisors, first by demoting her in April of 2011, and then by terminating her employment in 2012.

The ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To prevail on a retaliation claim under the ADA, a plaintiff must prove "that 'but for' an employee's statutorily protected activity the employer would not have taken the 'adverse employment action.'" E.E.O.C. v. Ford Motor

Co., 782 F.3d 753, 767 (6th Cir. 2015) (quoting Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013)). The Court again applies the McDonnell–Douglas burden-shifting framework, absent direct evidence of retaliation. Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014). The plaintiff bears the initial burden to establish, by a preponderance of the evidence, a prima facie case of retaliation, which requires a showing that: (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. Id. If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a nondiscriminatory reason for its action. E.E.O.C. v. Ford Motor Co., 782 F.3d 753, 767 (6th Cir. 2015 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)). If the defendant meets its burden, the plaintiff must then prove the employer's reason is pretext for retaliation. Id. (citing St. Mary's, 509 U.S. at 515).

The undisputed evidence shows that Plaintiff did not engage in activity protected under the ADA. Plaintiff provides no evidence that her complaints against either of her supervisors—Ms. Bagwell or Ms. Cobbs—were related to her alleged disability or otherwise related to the ADA. (Doc. No. 42 at ¶¶ 15-22.) Indeed, she admits that Ms. Fentress, who made the recommendation not to rehire her, did not view her as having a disability or in need of an accommodation. (Id. at 22.) The ADA is not "a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA." Rorrer, 743 F.3d at 1046 (citing 42 U.S.C. § 12203(a)). "Protected activity typically refers to action taken to protest or oppose a statutorily prohibited discrimination." Id. Given that Plaintiff has presented no evidence that she engaged in ADA protected activity, she is unable to show that her employer knew about such protected activity or

that there was a causal connection between her protected activity and the adverse action. Accordingly, as a matter of law, Plaintiff's retaliation claim under the ADA fails.

Plaintiff's claim that Defendant retaliated against her by demoting her in April of 2011 is time-barred. Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination. See 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5(e)(1); Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 309 (6th Cir. 2000). Plaintiff claims that Defendant demoted her in April of 2011, but she did not file an EEOC charge until November 29, 2012. Furthermore, even if the Court were to reach the merits of this claim, as with her claim of retaliatory termination, Plaintiff has failed to show that she engaged in an activity protected under the ADA prior to her demotion. Her complaints to Ms. Fentress about Ms. Bagwell were not related to any disability or to Defendant's regarding her as disabled. Plaintiff's claim that she was demoted in retaliation for activity protected under the ADA must be dismissed.

### C. State Law Claims

Plaintiff's claim for retaliation under Tennessee common law is also time-barred. This claim is a personal injury tort claim subject to the general one-year limitations period under Tennessee law. Weber v. Moses, 938 S.W.2d 387, 393 (Tenn. 1996) (citing Tenn. Code Ann. § 28-3-104). Defendant advised Plaintiff it would not rehire her on May 27, 2012, and confirmed the same by a letter from the Director of Schools on June 4, 2012. Plaintiff did not file her original complaint in this action until September 23, 2013, more than 15 months after any such cause of action accrued. Accordingly, summary judgment is appropriate on Plaintiff's state-law claims.

**IV.     Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment on all claims. The Amended Complaint is **DISMISSED WITH PREJUDICE**. An appropriate order shall issue.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE